UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>        Plaintiff,<br>vs.<br><br>LEONARD ANDREW LAWSON,<br>LIZA YOUNG VALCARCEL,<br><br>        Defendants. | 3:10-cr-116-TMB -JDR<br><br>**<u>FINAL RECOMMENDATION REGARDING MOTIONS TO SUPPRESS</u>**<br><br>(Docket Nos. 32 & 37) |

In a recommendation filed at Docket 87, I advised that defendants' Motion to Suppress be granted in part and denied in part. Defendant Lawson filed objections at Docket 93. Defendant Valcarcel filed objections at Docket No. 99. The government filed a Notice of No Objections at Docket No. 89. After careful

review of the objections, I decline to modify the original recommendation. However, a few comments are in order.

Defendant **Leonard Lawson** objects to several findings of fact.

First, Lawson objections to the finding of fact that members of the surveillance team "were cognizant that FedEx had a policy of delivering a package on Saturday. . . ." He argues that this finding is irrelevant and unsupported by the record. SA Clementson testified on direct examination that to the best of his knowledge FedEx uses a special kind of delivery tape on a box subject to a Saturday delivery. Thus, the policy of Saturday deliveries by FedEx was not irrelevant to the consideration of whether to abort the controlled delivery and delay delivery beyond its expected time of arrival. This was but one fact the agents had to consider but it was certainly not irrelevant.

Nate Clementson acted under cover as a FedEx driver to deliver the controlled package. The police log indicates that SA Clementson walked up to residence to deliver the package about 3:15 PM. Tr 1-141. The log further indicates that the alarm malfunctioned at 3:16 PM. *Id.* Although SA Clementson did not know that the trip wire which sent a signal to alert when the package had been opened had in fact malfunctioned, surveilling officers did make that observation.

Testimony at the suppression hearing addressed whether the officers should have called off the controlled delivery once they realized that the trip wire had

malfunctioned. The Recommendation discussed why it was reasonable for the officers to decide not to abort the delivery of the package. See Recommendation, p.5. The testimony reflects that there was no feasible way for the officers to alert SA Clementson to the fact that the malfunction had occurred without endangering him or the integrity of the investigation. See for example, Tr 1-138.

Lawson argues that the agents should have sought a new search warrant rather than rely on the contingency warrant 3AN-10-1172SW. Lawson accepts the conditions imposed by State District Judge Paul Olson in the contingency or anticipatory warrant wherein the warrant indicates that at least one of the conditions imposed was to occur before the government could enter someone's home to retrieve the box. The language of the conditions contains the connector word "or" meaning that all of the events did not have to occur before the government could enter a home under that search warrant.

Lawson argues the agents needed to wait two hours before entering the residence. Under the contingency warrant the government would not have had to wait two hours if a change in tone had occurred indicating the box had been opened. Nor were they required to wait two hours if the electronic device failed to transmit. If Lawson's argument was correct the language in the warrant would have stated ". . . a change in tone indicating the box had been opened, or the electronic device fails to transmit and at least two hours have elapsed with no change indicating the

box remains unopened inside of the residence." The magistrate judge disagrees with the defendant's reading of the contingencies in the search warrant.

The court declines to make additional findings of fact as suggested in Lawson's objections. It would have been premature for the officers to have represented to the issuing judge that there was no known nexus between the four people found at the residence on deck and the controlled delivery package.

Lawson objects to the finding of fact that group supervisor Richard Youngblood made the decision that the officers would enter the Early View residence and retrieve the parcel. Lawson claims that nobody knows who made that decision. Lawson relies on the surveillance log at Exhibit 3 as to when the officers entered the Early View residence. The log indicates that Valcarcel's vehicle was pulled over at 3:56 PM and that the entry team initiated entry at 3:59 PM. Those times do not comport with the evidence. Moreover, based on the evidence, it is likely that the log refers to the preparation of the entry team rather than their actual entry. After the traffic stop of Valcarcel the officers asked her who was in the residence because they wanted that information before an entry was made. Tr 1-160, 161.

SA Youngblood testified that he did not make the decision to enter the residence. Tr 3-44. SA Rambo said that he did not make the decision to go into 1831 Early View. Tr 3-185. However, SA Clementson testified that the decision to

enter the residence and attempt to retrieve the parcel was made by "group supervisor Rich Youngblood." Tr 1-47. Officer Jeffrey Gregg thought that Rich Youngblood made the decision to enter the residence. Tr 1-164. It is undisputed that Youngblood was in charge of the investigation. Tr 3-85. The identity of the officer who made the decision is not a critical fact. The magistrate judge declines to modify this finding of fact disputed by Lawson in his objections. The lack of clarity in the evidence as to who made the call to enter the Early View residence to retrieve the evidence is not determinative. The fact that the officers did enter when they did without seeking a telephonic warrant was reasonable regardless of which officer actually instructed the agents to proceed.

The Recommendation states that the officers knocked on the door of the Early View residence about 15 minutes after the decision was made to enter the residence to retrieve the parcel. Lawson claims that the agents waited at most 6 minutes not 15 minutes from the time Valcarcel left the Early View residence. The time was closer to 15 minutes than 6 minutes. SA Clementson described the sequence of events as follows: After the vehicle [Valcarcel's] left the residence team members followed the vehicle and noted that the receivers were no longer picking up a good signal from that vehicle. The surveillance unit that remained at the residence was still picking up a strong signal. "[A]t that time, or a short while later," the decision was made to enter the residence and attempt to retrieve the parcel.

Tr 1-47. It took a short while for the entry team to assemble for the entry. They waited until after Valcarcel was stopped in her vehicle and the officers spoke with her. The sequence of events is not in dispute nor is the fact that the officers entered the Early View residence before two hours had elapsed after the transmitter device malfunctioned.

Lawson argues that the government created the exigency to enter the Early View residence to retrieve a package. The Recommendation rejected this argument. The failure of the triggering device of the transmitter to indicate when the package was opened was first discovered by surveilling officers as the package was being delivered. No evidence at the suppression hearing was offered as to why the triggering device failed, and there is certainly no evidence to suggest that it was an intentional act by the government.

Lawson's objections to the legal analysis merely perpetuate his arguments made at the evidentiary hearing. The analysis of these arguments in the Recommendation need not be discussed again.

Valcarcel argues that the Recommendation fails to include pertinent facts relating to the agents field testing the contents from a white plastic container inside a box opened by FedEx employees. She refers to Officer Gregg's handling of the wax candle and plastic baggies to perform a field test on the contents of a baggy. The Recommendation describes observations made by Michael

Christenson, a security specialists for FedEx, his x-raying the box, and opening it before contacting the Drug Enforcement Agency for assistance. Docket 87, pp. 2-3. Additional facts describing Christensen's handling of the contents could have been included. See Tr 1-12, 13. These facts do not change the application of the law.

Valcarcel relies upon <u>Walter v. United States</u>, 447 U.S. 649 (1980) in support of her argument that the removal of a baggie from the container exceeded the scope of the private search by FedEx and constituted an unreasonable invasion of the owner's constitutionally protected interests in privacy without a search warrant. The objections do not address <u>United States v. Jacobsen</u>, 466 U.S. 109 (1984), a later Supreme Court case cited in the analysis of the government's seizure of the package. The latter case is more on point and supports the Recommendation.

Valcarcel argues that the Early View residence was not the "final resting place" relevant to the continency conditions in search warrant 1172. She makes this factual assertion "[b]ecause the signal could not indicate that the box had been opened, because the signal still transmitted the box's location, and because two hours had not elapsed prior to the entry of the police. . . ." Objections, Docket 97-1, p.3. The agents followed the package from its initial delivery at a residence on Stella Place to Valcarcel's residence at Early View Drive. Although the alerting device was unable to alert them to when the package was opened, due to its malfunctioning, the officers were able to ascertain that the package remained at

Early View Drive because the signal was still transmitting the box's location and Valcarcel was seen leaving without the package. As explained in the Recommendation the two hour time lapse was unnecessary to satisfy the conditions of the anticipatory warrant.

Valcarcel disagrees with the magistrate judge's conclusion that the initial entry to the Early View residence without further seeking a warrant constituted a valid exigency to prevent the destruction of evidence. She continues to argue that a telephonic search warrant could have been obtained in time. She adds that Detective Doll testified that she waited only 5 to 10 minutes before speaking to a magistrate about search warrant 1168. The record shows that the affiant, Officer Gregg, in the press of his duties sought to have someone else seek that warrant. He ended up having to go to an office across town to get all of the information together to present an affidavit for the search warrant. Theoretically, it may have been possible for a state court magistrate to issue a warrant but the circumstances of this case bear out the fact that the choice by the officer to personally appear before a state judge rather than seek a telephonic warrant was reasonable.

Valcarcel's objections reargue the significance of Officer Gregg's omission of certain facts from the affidavit in support of search warrants 1168 and 1169. The absence of telling the state judge that the alerting device to indicate the opening of the package was not working was superfluous since the box had already

been found in the master bedroom. The absence of telling the state magistrate that the box had not been opened was not itself a critical fact to the presence or absence of probable cause.

Valcarcel speculates that Magistrate Comfort might have declined to issue a search warrant if he had decided that a continency condition of the anticipatory warrant had not been satisfied prior to the officers' entry. The application for search warrant 1169 states that on July 14, 2010 Judge Olson signed a continency warrant regarding the FedEx package. Thus, if Magistrate Comfort wanted more information about the continency warrant he could have asked the affiant or asked the affiant to produce a copy of the contingency warrant.

Search warrants 1168 and 1169 were issued based on a showing of probable cause to believe that evidence of a crime might be located in the residence. Their issuance was not contingent upon whether the anticipatory warrant had been satisfied. The omissions of the failure of the alerting device, facts about whether the continency conditions of the earlier warrant had been satisfied, and that the delivered package had been found unopened did not constitute a reckless disregard for the truth as argued by the defendant. Nor would their inclusion have deprived the warrants of probable cause.

Valcarcel disagrees with the conclusion in the Recommendation that the Early View residence was secured for no longer than was necessary. Valcarcel

argues that there was no person inside the Early View residence at the time of the police entry. Four people were standing on the deck attached to the house by a sliding glass door. Valcarcel had indicated at her traffic stop that there were only two people at the residence. The officers did not have reliable information prior to entry as to how many people might be inside.

The objections indicate that the agents entered about 4:00 PM and by 4:35 PM, Liza Young Valcarcel, Leonard Lawson and Harold Lawson were at the DEA building. Docket 97-1, p.8. The objections indicate that Lawson's aunt and mother left the residence shortly thereafter by taxi. The objections offer nothing new but simply perpetuate the arguments made at the suppression hearing. The facts discussed in the Recommendation explain why Officer Gregg took as long as he did to obtain the search warrant.

Valcarcel objects to the determination in the Recommendation that she knowingly, intelligently and voluntarily waived her Miranda rights. The objections recite some additional circumstances of her arrest and interrogation, namely that she was arrested at gun point, the officers yelled at her, she was not provided a written advisement of rights, nor did she make any written acknowledge or waiver of her Miranda rights. The colloquy was not tape recorded. She did not remember Officer Gregg advising her of her rights but the recitation of her Miranda rights was corroborated by another officer. She acknowledged that she did not unequivocally

demand to speak to any attorney. In spite of her lack of antagonism and cooperation during the interrogation she maintains that she did not provide a knowing, intelligent waiver of her <u>Miranda</u> rights. The Recommendation concludes otherwise and is supported by the record.

The Recommendation states that Valcarcel's interrogation at the DEA office began about 7:20 PM. Docket 87, p.8. The magistrate judge agrees with the objections that that time is incorrect. SA Rambo, who did not make notes or keep a log of his activities that day testified that he thought the time would be "more along the lines of maybe 7 or thereabouts." Tr 3-104. When questioned at the hearing he stated that he would defer to the time reported for the interview by Officer Gregg. Tr 3-104. Officer Gregg testified that the interview commenced about 8:20 PM. Docket 75, Tr 2-18. The interview of Valcarcel lasted about 45 minutes. Docket 77, Tr 3-76.

Valcarcel maintains that she did not voluntarily agree to allow the officers to see the screens on her cell phone. However, this view is contrary to the testimony of Officer Gregg. Docket 76, Tr 13.

The Recommendation states that SA Clementson observed zip lock bags on the sink in the bathroom to the master bedroom. Docket 87, p.10. Paragraph 14 of the affidavit for SW 1169 states in relevant part regarding the observations made by the agents in clearing and securing the residence "sandwich

bags, which are frequently utilized as packing material, were observed in the master bedroom." The discrepancy of whether the ziplock bags were found in the bathroom or bedroom was not addressed in the recommendation. Valcarcel argues that the "error" was important in giving consideration to the proximity of the baggies to the FedEx box and gun. This observation as well as others stated in the search warrant application were initially made by different officers. Information was collected by one officer and then relayed to Officer Gregg to add to his affidavit. The location of the baggies inside the master bathroom rather than the master bedroom where the shotgun and FedEx box were found is not significant to the presence of probable cause.

   The objections maintain that Leonard Lawson was not provided a copy of the search warrant. Officer Gregg testified that he understood that a copy of the search warrant was given to Harold Lawson at the DEA building. Docket 75, Tr 2-58. The Recommendation discusses the legality of the failure to serve a copy of the search warrant.

   The Recommendation clearly identifies the probable cause standard needed for Valcarcel's arrest. The Recommendation states that there was certainty as to the commission of a crime because the officers knew that the cocaine had been sent through the mail. The Recommendation concludes that under the totality of the circumstances it was reasonable for the officers to conclude that Valcarcel

was intending to possess the illicit drugs based on her conduct. The Recommendation concludes that there was probable cause to arrest her. Recommendation, p.27.

Valcarcel objects to the finding that Harold Lawson was taken to the DEA office for further questioning. Docket 97-1, p.8. The Recommendation at p.32 in relevant part states: "Leonard Lawson and Harold Lawson were subsequently taken to the DEA office for further questioning." That statement is correct. See Tr 2-37. The Recommendation did not state that Harold Lawson was actually interrogated at the DEA office.

Additional objections by Valcarcel to factual statements in the Recommendation need no further comment. The Recommendation need not include every factual assessment of the evidence to support the finding of material fact or conclusions of law reached by the court. With the comments noted above the magistrate judge declines to modify the Recommendation that the motions to suppress be granted in part with respect to evidence of the FedEx web site on the computer screen, the black ceramic candle holder behind the computer, and the presence of California tags on luggage. These "observations" were made beyond the scope of a lawful protective sweep and should be suppressed. To the extent that the government may seek to use the "opening photographs" in their case-in-chief these photographs should be suppressed as preceding the warrant. In all other

respects the motions to suppress should be denied. IT IS SO RECOMMENDED.

This matter shall now be referred to the assigned district judge for his determination.

DATED this 22nd day of March, 2011, at Anchorage, Alaska.

    /s/ John D. Roberts
JOHN D. ROBERTS
United States Magistrate Judge